IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Denny G. Rose, | ) | C/A. No. 4:02-1192-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Kemper National Services, Inc., BellSouth Corporation, and BellSouth Long Term Disability Plan, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

In this case, the parties have agreed that this matter involves only a claim for benefits pursuant to ERISA and a claim for attorney's fees pursuant to 29 U.S.C. § 1132(g)..

**Procedural Background**

This matter is before the Court pursuant to the parties Joint Stipulation, wherein it was agreed that the Court may dispose of this matter based upon the Joint Stipulation, the administrative record, the plan documents, and each parties' memorandum in support of judgment.[1] The Complaint in this case was originally filed in the Florence County Court of Common Pleas on February 28, 2002, alleging the wrongful termination of benefits pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq*. ("ERISA"). The defendants filed a notice of removal on April 12, 2002 and

---

[1] The Fourth Circuit has recognized that there is no prohibition against the parties agreeing to do away with the summary judgment standard and simply allowing the court to dispose of a matter on its' merits by way of stipulation. See *Bynum v. CIGNA HealthCare of North Carolina, Inc.*, 287 F.3d 305 (4th Cir. 2002), footnote 14, where the court stated:
> "While the parties' agreement to waive the summary judgment standards and submit their case to the district court on its merits seems to be unique, the ERISA statute does not preclude such an agreement. *See also Tester v. Reliance Standard Life Ins. Co.*, 228 F.3d 372, 374, 377 (4th Cir. 2000) (affirming decision of district court after bench trial where parties agreed for court to decide ERISA claim on merits and doing away with summary judgment standard.)."

1

timely answered the Complaint, denying the material allegations therein and raising several affirmative defenses.

Defendants filed a motion for summary judgment on December 11, 2002. The Court denied the motion for summary judgment and remanded the issue of the plaintiff's short term disability ("STD") benefits to the administrator's appeal board. The plaintiff was given sixty (60) days to present medical documentation in support of his claim for the administrator to examine. The defendants again denied the plaintiff's claim for benefits. On November 3, 2004, defendants filed a motion for summary judgment on the basis that the plaintiff failed to exhaust his administrative remedies. The parties signed a consent order allowing the plaintiff to appeal the denial of benefits to the appeal review board. The defendants denied the plaintiff's claim for benefits on March 7, 2005. Pursuant to the ERISA Specialized Case Management Order, this matter is before the Court on the parties' cross memoranda in support of judgment.

## **Factual and Procedural History**[2]

BellSouth established and maintained plans, which provide eligible employees with certain benefits in the event of short-term and long-term disability as defined under the terms of those plans. BellSouth has delegated the day-to-day responsibility for administering the Plan to defendant Kemper[3] National Services.[4] (A.R. DEF 10.) The plan provides that the plan administrator and other plan

---

[2] The Court notes that plaintiff fails to cite to the Joint Stipulation, as required by the ERISA Specialized Case Management Order. The Court has attempted, to the extent possible, to locate the documents referred to by plaintiff in the Joint Stipulation. Since this is an ERISA case, the Court has limited its review to the Joint Stipulation and to the exclusion of any additional information.

[3] Kemper has since taken the corporate name Broadspire. This Court will continue to refer to the defendant as Kemper for constistency.

[4] To the extent plaintiff attempts to argue that it was improper for BellSouth to delegate its duties to Kemper, this Court finds that argument unpersuasive. The Plan specifically allows for the delegation of responsibilities for the operations and administration of the Plan in section 6.8. (A.R. DEF 32.) Additionally, such delegation to Kemper is cited in the Summary

2

fiduciaries have discretionary authority to interpret the plan and determine eligibility for benefits. (A.R. DEF 10, DEF 30, DEF 32.) Kemper is the claims administrator for the plans and, as such, an ERISA fiduciary. Kemper denied plaintiff's benefits on the basis that plaintiff failed to demonstrate he was laboring under a disability as defined by the written terms of the plans

Plaintiff Denny G. Rose is a former employee of BellSouth. Plaintiff injured his back on December 15, 1997, apparently while removing a ladder from his truck. Rose took a leave of absence beginning December 17, 1997. (A.R. 68.) Rose applied for benefits under the BellSouth STD Plan after the applicable seven (7) day waiting period expired on December 24, 1997. Rose received STD benefits for a period of forty-six (46) weeks.

Rose first saw his treating physician Dr. James McInnis regarding the back condition at issue on December 19, 1997. (A.R. 63.) On that date, Dr. McInnis noted that Rose's back was very rigid because of muscle spasm. He noted a twenty percent (20%) whole person impairment and a twenty-seven percent (27%) impairment of the spine. On January 14, 1998, Dr. McInnis noted that with physical therapy and medication the plaintiff was making good progress. (A.R. 82.) He noted that the plaintiff "will continue out of work." (A.R. 82.) On February 11, 1998, Dr. McInnis again documented that the plaintiff was making some progress. He noted that the spasms in Rose's back were better controlled with the combination of therapy and medication. He recommended another four (4) to six (6) weeks of conservative management. In June of 1998, Dr. McInnis expressly contemplated the possibility of Rose returning to work and recommended another four (4) weeks of therapy. (A.R. 89.)

On October 6, 1998, Dr. McInnis wrote a letter to Kemper stating:

---

Plan Description. (A.R. DEF 10.)

3

> The patient, Denny Rose, has excessive translation of the lumbar spine. This condition causes him to have severe back pain and ambulating difficulties. **The patient may be released back to work under the conditions that he may not be allowed to lift anything weighing grater than 5 pounds**. The patient also must now be required to perform any task involving rapid movement.

(A.R. 91 (emphasis added).)

At the request of the defendants, a Functional Capacity Evaluation ("FCE") was performed at Lowe's Therapy on October 13, 1998. The examination findings revealed that the plaintiff was able to complete all test activities requested and was consistent in his effort. He did not demonstrate the necessary physical demands to perform his usual and customary job duties as a service technician, but the optimal work capacity was demonstrated to be at a medium physical demand level. (A.R. 92-98.)

On October 21, 1998, Kemper wrote Dr. McInnis asking if he agreed with the results of the FCE. (A.R. 107.) Dr. McInnis signed the letter and returned it to Kemper, indicating that he did agree with the restrictions and deemed them to be permanent medical restrictions. (A.R. 107.) Those restrictions are as follows:

| | |
|---|---|
| Stand - | Cannot stand for more than 33% of day |
| Sit   - | Cannot sit for more than 33% of day |
| Bend  - | Cannot bend for more than 33% of day |
| Reach - | Cannot reach for more than 67-100% of day |
| Climb - | Cannot climb for more than 34-66% of day |
| Squat - | Cannot squat for more than 34-66% of day |
| Kneel - | Cannot kneel for more than 67-100% of day |
| Crawl - | Cannot crawl 67-100% of day |
| Lift  - | Cannot lift more than 50lbs 33% of day, Cannot lift more than 25lbs 34-66% of day, Cannot lift more than 10lbs 67-100% of day |

(A.R. 107.) In his notes dated October 27, 1998, Dr. McInnis also indicated that he agreed with the FCE restrictions:

> Mr. Rose had been through functional capacity evaluation at Lowe's PT and the results are now published. He does not have the strength and stamina to carry out the essentials

4

> of the job that he's had with Southern Bell in the past and I am not sure at all that they can accommodate to meet his restrictions. He has a 27% impairment of the L-S spine as a result of excessive translation and weakness that we have not been able to overcome which will prevent him from returning to his usual duties. . . . I have received, today, a letter from Jasmine Watson about Mr. Rose and have signed the form because I agree with the fact that the restrictions that Phil has recommended are in fact necessary because of the injuries of the back problem that Mr. Rose has at the present time and I do not feel that there is any chance that he will improve sufficiently from this point forward. It is therefore my opinion, within reasonable medical certainty that Mr. Rose has a 27% impairment of the lumbar spine which is permanent and it is unlikely to change by more than 2% over the next 12 months; that he has reached maximum medical improvement in that this condition is stable and static and has not changed for several months now; it is directly and cause related to the incident of December 15, 1997.

(A.R. 110.)

In November, 1998, Dr. McInnis completed an Attending Physician Statement which confirmed Rose's ability to work. (A.R. 119.) On that document, Dr. McInnis checked the box that plaintiff's physical impairment was "Class 4. Marked limitation of functional capacity/capable of sedentary work." (A.R. 119.)

In making their disability determination, Kemper requested "peer review" from two orthopedic surgeons. Peer review was requested from Dr. Ira Posner, an orthopedic surgeon on December 18, 2003. (A.R. 144-146.) Dr. Posner reviewed the plaintiff's medical records and was asked to evaluate his functional impairment related to "any occupation." (A.R. 144-145.) Dr. Posner concluded that the medical information he reviewed failed to support functional impairments that would preclude plaintiff from working. (A.R. 145.) His rationale was as follows:

> [Dr. McInnis's] final notes are dated 1999, indicating that he just continues to have low back pain, but does not indicate any orthopedic neurologic examination or functional impairment. This individual did undergo a Functional Capacity Evaluation, dated 10/13/98, which indicated that he could work at the medium physical demand level. Therefore, the documentation does not indicate any anatomic disability with this individual's lumbar spine. There is inadequate radiographic imaging. There is also very

> inadequate medical documentation from an orthopedic and neurological evaluation of the lumbar spine and extremities that would indicate any functional impairment that would preclude him from return to a job at the medium demand level. His previous job with BellSouth was at the heavy demand and according to the functional capacity evaluation of 1998, he could not participate in demand at this level.

(A.R. 145-146.)

Additionally, Kemper requested a "peer review" from Dr. James Wallquist, also an orthopedic surgeon, on January 27, 2004. (A.R. 148-151.) Dr. Wallquist reviewed the plaintiff's medical records and was asked to evaluate his functional impairment related to "any occupation." (A.R. 148-149.) Dr. Posner also concluded that the medical information he reviewed failed to support functional impairments that would preclude plaintiff from working. (A.R. 149.)

> The relevant portions of the STD plan are as follows. As defined by the STD plan,
>
> "Disability" means a medical condition which makes a Participant unable to perform **any type of work** as a result of a physical or mental illness or an accidental injury. "Any type of work" includes the Participant's regular job with or without accommodations, any other Participating Company job (regardless of availability) with or without accommodations, or temporary modified duties. "A Participating Company job" is any job within a Participating Company; or any job outside a Participating Company which is comparable in skills and functions. A Participant subject to a Disability is referred to as being "Disabled".

(A.R. DEF 25 (emphasis added).) "'Participating Company' means BellSouth or any Affiliate which elects, with the concurrence of BellSouth, to participate in the Plan, and which has not discontinued such participation." (A.R. DEF 25.) Similarly, the Summary Plan Description provides that a participant is eligible for STD benefits if:

> You are disabled and are unable to perform **any type of work** as a result of a physical or mental illness or an accidental injury. Any type of work includes your regular job with or without accommodations, any other participating company job (regardless of availability) with or without accommodations, or temporary modified duties.

(A.R. DEF 4 (emphasis added).)

6

Regarding whether a plan administrator has discretionary authority, the short term disability plan states: "The [Employees' Benefit Claim Review Committee] (and its delegates) has complete discretionary authority to determine Benefits and to interpret the terms and provisions of the Plan. Such determinations and interpretations shall be final and conclusive." (A.R. DEF 32.) The Summary Plan Description also states:

> Kemper is the named fiduciary under the plan with complete authority to review all denied claims for benefits in exercising such fiduciary responsibilities. Kemper shall have discretionary authority to determine whether or to what extent participants are eligible for benefits and to construe disputed or doubtful plan terms. Kemper shall be deemed to have properly exercised such authority unless they have abused their discretion hereunder by acting arbitrarily and capriciously.

(A.R. DEF 10.)

As a result of Kemper's investigation, the following decision upholding the termination of STD benefits was issued:

> Your physicians have not given us sufficient objective, medical data to support your being "disabled" from any type of work, either as of November 1998 or today. These terms are defined in Section 2 of the BellSouth Short Term Disability Plan. . . .
>
> Under this definition, a Participant is not disabled if he or she can perform any work activities, including part-time clerical duties. The restrictions to which Dr. McInnis agreed do not prevent you from performing sedentary type work, such as office work involving using the telephone, a computer, etc. . . . Because your condition does not prevent such work activities, you are not disabled as defined by the Plan, and likewise were not so disabled in November, 1998. For the reasons detailed above our original decision to deny short term benefits effective 11/03/1998 forward has been upheld.

(A.R. 158.)

7

**Discussion of the Law**

**Standard of Review**

The parties state in the Joint Stipulation that they are unable to agree as to the appropriate standard of review. (Jt. Stip. ¶ 3). The plaintiff argues that the appropriate standard of review is *de novo*[5] while the defendants argue that this Court's review should be that of an abuse of discretion.

Because ERISA does not specify the appropriate standard of judicial review of a fiduciary decision, courts are instructed to develop a federal common law, guided by principles of trust law. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109-11 (1989). Thus, as a general proposition, ERISA plans, as contractual documents, *see Wheeler v. Dynamic Eng'g, Inc.,* 62 F.3d 634, 638 (4th Cir.1995), are interpreted *de novo* by the courts, which conduct their review "without deferring to either party's interpretation." *Firestone,* 489 U.S. at 112. "If the plan [does] not give the employer or administrator discretionary or final authority to construe uncertain terms, the court review[s] the employee's claim as it would . . . any other contract claim--by looking to the terms of the plan and other manifestations of the parties' intent." *Id.* at 112-13. Thus, the Fourth Circuit has held that in deciding whether a plan provision for benefits is prescriptive or discretionary, a court must review the Plan's language *de novo. See Haley v. Paul Revere Life Ins. Co.,* 77 F.3d 84, 89 (4th Cir.1996). Similarly, in determining the scope of contractually conferred discretion and whether a fiduciary has acted within that scope, a court acts *de novo. See id.* The abuse of discretion standard, not the arbitrary and

---

[5] The plaintiff does not allege that the modified abuse of discretion applies, and only discusses the *de novo* and abuse of discretion standards of review in his memorandum.

8

capricious standard, is the appropriate standard of review of a fiduciary's discretionary decision under ERISA.[6]  *Booth*, 201 F.3d at 341.

When, however, a plan by its terms confers discretion on a fiduciary and the fiduciary acts within the scope of conferred discretion, the courts defer to the fiduciary in accordance with well-settled principles of trust law: "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion." *Firestone,* 489 U.S. at 111 (quoting Restatement (Second) of Trusts § 187 (1959)). Thus, a trustee's discretionary decision will not be disturbed if it is reasonable, even if the court itself would have reached a different conclusion. *See id.*; *de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1185-86 (4th Cir.1989).

In determining whether a fiduciary's exercise of discretion is reasonable, numerous factors have been identified as relevant, both in the cases applying ERISA and in principles of trust law. In *Firestone,* for example, the Supreme Court indicated that the fact that a fiduciary operates under a conflict of interest *must* be weighed in determining whether there is an abuse of discretion. *See Firestone,* 489 U.S. at 115; *accord Doe v. Group Hospitalization & Med. Services,* 3 F.3d 80, 85 (4th Cir.1993). The Fourth Circuit has held that

> a court may consider, but is not limited to, such factors as: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive

---

[6] The Court mentions the arbitrary and capricious standard only because the Plan states: "Kemper shall be deemed to have properly exercised such authority unless they have abused their discretion hereunder acting **arbitrarily and capriciously**." (A.R. DEF 10(emphasis added).)  While the defendant does not assert that this Court's review should be that of arbitrary and capricious, the plaintiff does address that standard in her memorandum in support of judgment.

> requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth*, 201 F.3d at 342-343.

The express terms of the plan give the plan's Administrative Committee, and its delegates, "complete discretionary authority to determine Benefits and to interpret the terms and provisions of the plan." (A.R. DEF 32.) The scope of this discretion is unusually broad. The plan provides, "Kemper shall have discretionary authority to determine whether or to what extent participants are eligible for benefits and to construe disputed or doubtful plan terms. Kemper shall be deemed to have properly exercised such authority unless they have abused their discretion hereunder by acting arbitrarily and capriciously." (A.R. DEF 10.) The language of the plan at issue is very similar to that the Fourth Circuit reviewed in *Booth*. In that case, the Court stated:

> From this contractual language, it might be argued that the Plan is attempting to limit courts in their review to the narrowest of circumstances, i.e., whether the administrator acted in bad faith. Moreover, the Plan purports to return judicial review to the pre-*Firestone/de Nobel* standard of "arbitrary and capricious." But to interpret the Plan in this manner would impinge on the proper role of courts in enforcing contracts and establishing principles of judicial review. Both *Firestone* and *de Nobel* articulate standards of judicial review of discretionary decisions by fiduciaries in the context of ERISA and its purposes. While the ERISA jurisprudence recognizes that parties have broad authority through contractual language to agree on the scope of benefits and the procedures to follow in applying for them, we do not understand ERISA to allow a plan to alter the established standard of judicial review of discretionary decisions for reasonableness.
>
> Taking into account the entire Plan before us, however, we do not interpret the Plan's language to authorize discretionary decisions that would violate established principles of reasonableness. The Plan thoroughly delineates benefits to which its beneficiaries are entitled, and it carefully details benefit eligibility requirements. It would be incongruous to interpret the Plan documents before us as additionally conferring such broad discretion on its administrator as to sanction determinations that would not withstand analysis using the reasonableness factors that have been recognized by *Firestone* and its progeny in the Fourth Circuit. The Plan does not authorize its administrator to make determinations that are contrary to the plain language of the Plan; that frustrate the

> purposes and goals of the Plan; that are inconsistent with other provisions or earlier interpretations of the Plan; that are rendered pursuant to arbitrary or uninformed decisionmaking processes; that are inconsistent with the procedural and substantive requirements of ERISA; or that are made in furtherance of an interest that conflicts with that of the Plan beneficiaries.
>
> Accordingly, we conclude that the Plan in this case provides its administrator with discretion to interpret Plan language and to grant or deny benefits in accordance with these interpretations, but we will enforce the administrator's decisions only if they are reasonable, applying the factors that we have previously identified.

*Booth*, 201 F.3d 343-344.  This Court concludes that the plan in this case, like the plan in *Booth*, provides its administrator with discretion to interpret plan language and to grant or deny benefits in accordance with these interpretations.  Because the administrator was given discretion to make the decision under review in this case, this Court will apply the abuse of discretion standard of review.  *See Firestone*, 489 U.S. at 115; *Ellis*, 126 F.3d at 232.

The abuse of discretion standard applies "where the benefit plan grants the administrator or fiduciary discretionary authority to determine eligibility or to construe the terms of the plan." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997).  Under an abuse of discretion standard, a decision will not be disturbed if it is reasonable, even if the Court disagrees with the ultimate decision. *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000).  When an administrator is granted discretion by the terms of an ERISA plan

> a court reviews the administrator's decision to deny benefits for an abuse of that discretion, asking whether the denial of benefits was reasonable, *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 787 (4th Cir. 1995) (citations omitted), "based on the facts known to [the administrator] at the time." *Sheppard v. Enoch Pratt Hosp., [Inc.*, 32 F.3d 120,] 125 [(4th Cir. 1994)].  An administrator's decision is reasonable "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Bernstein*, 70 F.3d at 788 (internal quotation marks and citation omitted).

*Stup v. Unum Life Ins. Co. of America*, 390 F.3d 301, 307 (footnote omitted).

Since the appropriate standard of review in this case is an abuse of discretion, this Court's review is limited to the evidence that was before the claims administrator at the time of the decision. *See Sheppard v. Enoch Pratt Hospital v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994); *see also Bernstein*, 70 F.3d at 788 ("[W]hen a district court reviews a plan administrator's decision under a deferential standard, the district court is limited to the evidence that was before the plan administrator at the time of the decision."). Moreover, the plaintiff bears the burden of showing that a decision to deny benefits is an abuse of discretion. *Band v. Paul Revere Life Ins. Co.*, 26 Emp. Ben. Cas. (BNA), *5 (4th Cir. 2001).

**Plaintiffs' Claim**

The question before the Court is whether, after taking into account the evidence before Kemper at the time it made its claim decision, Kemper abused its discretion in concluding that plaintiff failed to show he was disabled. Under the plan, plaintiff is "disabled" and, therefore, entitled to STD benefits if he is "unable to perform any type of work as a result of a physical or mental illness or an accidental injury." (A.R. DEF 25.) As noted above, Kemper denied Plaintiff's claim for STD benefits on the ground that "Your physicians have not given us sufficient objective, medical data to support your being 'disabled' from any type of work." (A.R. 158.)

A participant's entitlement to an "award of benefits under an ERISA plan is governed in the first instance by the language of the plan itself." *S.S. Trade Ass'n Int'l Longshoreman's Ass'n v. Bowman*, 247 F.3d 181, 183 (4th Cir. 2001). In other words, the written language of an employee benefit plan determines an employee's entitlement to benefits and the amount of those benefits. *See Dameron v. Sinai Hospital Baltimore, Inc.*, 815 F.2d 975, 978 (4th Cir. 1987); *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116 (4th Cir. 1989). As claims fiduciary for the plans, Kemper is obligated to plan participants

to follow the written terms and conditions of the plans in reviewing disability claims. *See* 29 U.S.C. § 1104(a)(1)(D); *Pegram v. Herdich*, 530 U.S. 211, 223-24 (2000).

The STD plan places the responsibility on the employee seeking benefits to offer proof to Kemper that the employee is disabled as defined by the STD plan. (A.R. DEF 7.)[7] In the instant case, Kemper determined plaintiff failed to provide sufficient evidence of disability. Plaintiff has failed to show that this denial of benefits was unreasonable.

Kemper has interpreted the STD plan definition of disability as excluding any participant who is able to perform any work activity, including part time work in sedentary activities. This Court finds that Kemper's interpretation of this language has a rational basis in the plan language. Here, it is undisputed that Rose had back pain. However, the issue is whether such medical problems met the definition of disability under the STD Plan -- the inability to perform **any** type of work, including modified duties. Here, Plaintiff's **own treating physician**, Dr. James McInnis, confirmed that Rose was able to return to work with certain restrictions on his physical activities. (A.R. 91, 110.) The FCE measured his physical ability, and Dr. McInnis confirmed that Rose was "capable of sedentary work." (A.R. 119.) As revealed by the administrative record, no other doctor supplied **any** opinion, and Dr. McInnis' opinion stands undisputed. Rose has submitted **no** evidence indicating he was disabled from all work.

However, Kemper did not rely solely on the opinion of plaintiff's treating physician in terminating his STD benefits. As discussed above, Kemper also sent the plaintiff's medical records to two orthopedic surgeons for peer review. Both of those surgeons agreed with the opinion of Dr.

---

[7] The Summary Plan Description of the STD plan provides as follows: "To qualify for STDP benefits, you must: . . . As required by the STDP representative, furnish satisfactory evidence of your disability." (A.R. 7. (emphasis in original))

McInnis that Rose could work subject to certain limitations. Accordingly, Kemper's decision that Rose was not disabled under the terms of the Plan was not an abuse of discretion.

Based on a review of the medical evidence available to Kemper on November 3, 1998, and Kemper's interpretation of the plan language, Kemper did not abuse its discretion in discontinuing plaintiff's STD benefits.

The Court concludes that based on the evidence before Kemper, a reasonable fiduciary could conclude that, despite his condition, plaintiff was not disabled from all work. After reviewing the Administrative Record and applying the aforementioned standard of review, the Court finds there was substantial evidence to support defendants' denial of benefits, arrived at after a deliberate, principled, reasoning process. While plaintiff may disagree with this determination, this Court must defer to Kemper's decision because it is supported by substantial evidence in the claim record and, therefore, did not constitute an abuse of discretion.

## **Conclusion**

Based on the evidence before Kemper, the Court concludes that Kemper had a reasonable basis for finding that plaintiff was not disabled and did not abuse its discretion in discontinuing STD benefits. The Court finds that defendants did not abuse their discretion and, accordingly, are entitled to judgment in this case. It is therefore **ORDERED** that Defendants are granted judgment in their favor.

**IT IS SO ORDERED**.

s/ R. Bryan Harwell<br>R. Bryan Harwell<br>United States District Judge

September 7, 2005
Florence, SC